**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Donald Greer,

Plaintiff,

v.

Eaton Corporation,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 04-941 ADM/AJB

---

Edward A. Zimmerman, Esq., The Business Lawyers, Burnsville, MN, argued for and on behalf of Plaintiff.

John J. Doyle, Jr., Esq., Constangy, Brooks & Smith, LLC, Winston-Salem, NC, argued for and on behalf of Defendant, and Lateesa Ward, Esq., Ward & Ward, LLC, Minneapolis, MN, appeared as local counsel for Defendant.

---

## I. INTRODUCTION

On May 18, 2005, oral argument before the undersigned United States District Judge was heard on Defendant Eaton Corporation's ("Eaton" or "Defendant") Motion for Summary Judgment [Docket No. 17]. In its Complaint [Docket No. 1], Plaintiff Donald Greer ("Greer" or "Plaintiff") alleges Eaton Corporation violated the Minnesota Whistleblower Act ("MWA") by firing him in retaliation for complaints regarding suspected violations of the Vietnam Era Veterans Readjustment Assistance Act of 1974 ("VEVRAA"). Because Plaintiff filed his action after the statute of limitations had expired and because Plaintiff can not demonstrate causation, Defendant's Motion for Summary Judgment is granted.

## II. BACKGROUND

Donald Greer began employment with Eaton Corporation in April 1989. Greer Dep.

(Appendix to Def's Motion for Summ. J. ("Appendix") [Docket No. 20] Ex. 2) at 65-69, 72-73. Eaton manufactures hydraulic steering units and motors. Id. at 67. Greer held the position of lab technician until his employment was terminated. Id. at 66-67, 78. On January 15, 2002, Greer was terminated along with over 100 other Eaton employees as part of a planned reduction in force. Collins Dep. (Appendix Ex. 4) at 40.

Twice during his employment with Eaton, Greer made complaints about alleged VEVRAA violations. One complaint was made to the corporate ethics hotline in September 2001; the other in a complaint filed with Office of Federal Contact Compliance Programs ("OFCCP") on November 10, 2001. Greer Dep. 283-88, 306-08, Ex. 51.

Prior to the reduction in force, Mike Gust ("Gust") determined seven positions would be eliminated from the lab in which Greer was employed. Duray Dep. (Appendix Ex. 5) at 30-31. In December 2001, Vince Duray ("Duray"), the test lab manager, ranked the test lab employees on selection criteria established by Eaton's selection procedures. Id. at 3, 20-22; Carstens Dep. (Appendix Ex. 3) at 45, Ex. 27. Duray then provided his results to Dave McConnell, who finalized the rankings. Duray Dep. at 20-22. Greer ranked near the bottom of the rankings, and was selected for termination. Carstens Dep. at 74, Ex. 35. On January 11, 2002, after the decision on terminations had been made but before the terminated employees were informed of the decisions, Patrick Collins ("Collins") learned that Greer had filed a complaint with the OFCCP. Collins Aff. (Appendix to Reply Brief in Support of Def's Motion for Summ. J. [Docket No. 24] Ex. 7) ¶¶ 3-4. Collins reevaluated the process by which Greer was selected for termination and determined no change in the planned terminations was warranted. Id.

On January 15, 2002, Greer met with Duray, McConnell, and Shelly Voecks, who informed Greer he was being terminated. Greer Dep. at 299-305. Specifically, Greer was told the "decision was final." Id. Although Greer remained on the payroll through the end of January, January 15 was his last day of employment. Id. at 314-17. Greer returned the next day to pick up a copy of his personnel file, which he requested, but otherwise finished his employment on January 15. Id. at 314-17. On January 16, Greer applied for unemployment, and on January 17, he applied for a job with Metro Transit for which he was ultimately hired. Id. at 27-28, 341-43, Ex. 59; Hearing Exhibit.

On February 7, 2002, Greer filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). On September 17, 2002, Greer received a No Action Letter dismissing his complaint from the EEOC. Pl's Appendix [Docket Nos. 26-35] Ex. 3. Plaintiff filed his Complaint in Hennepin County Court on January 30, 2004; it was removed to this Court on February 17, 2004.

## III. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Andersen v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Andersen, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but

must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B. Statute of Limitations**

Defendant's first argument for summary judgment rests on the allegation that Plaintiff filed his Complaint after the expiration of the statute of limitations on his MWA claim. There is no dispute in the record that Plaintiff was fired on January 15, 2002, and commenced the instant lawsuit on January 30, 2004. The parties, however, disagree over the length of the statute of limitations, as well as whether Plaintiff's EEOC claim tolled the relevant statute of limitations.

**1. Length of Statute of Limitations**

Minnesota Statute § 541.07(1) states:

> Except where . . . otherwise prescribe[d], the following actions shall be commenced within two years:
>
> (1) For libel, slander, assault, battery, false imprisonment, or other tort, resulting in personal injury . . . .

Minnesota courts have held that actions which fall under this code section include actions (1) that are intentional or strict liability torts; (2) that involved injury to the person; and (3) that usually can be the basis of a criminal prosecution. Christenson v. Argonaut Ins. Cos., 380 N.W.2d 515, 518 (Minn. Ct. App. 1986) (citing Wild v. Rarig, 234 N.W.2d 775 (Minn. 1975)). Although the Minnesota Supreme Court has not specifically addressed the statute of limitations for the MWA, the Minnesota Court of Appeals has repeatedly held that claims under the MWA are subject to the two year statute of limitations as set forth in Minn. Stat. § 541.07. Larson v. New Richland Care Center, 538 N.W.2d 915, 921 (Minn. Ct. App. 1995); O'Sullivan v. Minnesota, C8-99-597, 1999 WL 1058238, *1

(Minn. Ct. App. Nov. 23, 1999); Barrott v. County of Anoka, 1997 WL 206810, *1 (Minn. Ct. App. April 29, 1997). Despite this consistent authority, Plaintiff argues the Court of Appeal's opinion in Larson was wrongly decided. Consequently, according to Plaintiff, a six year statute of limitations should apply as mandated by Minnesota Statute § 541.05, which states that a six year statute of limitations will apply to a cause of action "created by statute, other than those arising upon a penalty or forfeiture or where a shorter period is provided by section 541.07."

Although Plaintiff performs a painstaking analysis of the Larson opinion and explains his rationale for why he believes it was wrongly decided, Plaintiff does not present any authority to suggest the Minnesota courts have or would adopt his theory. As a result, this Court views Larson as the controlling authority on Minnesota law, and will follow its holding. Garnac Grain Co. v. Blackley, 932 F.2d 1563, 1570 (8th Cir. 1991) (holding that a district court must follow intermediate courts holdings when they are the best evidence of what the state law is). Thus, the length of the statute of limitations on MWA claims is two years.

**2. Date Plaintiff's Claim Began to Accrue**

Next, Plaintiff contends that after he was terminated on January 15, 2002, Defendant continued to evaluate his termination. According to Plaintiff, because his termination continued to be reviewed until he received his last paycheck on January 31, 2002, the discrimination against him continued until that date. Plaintiff thus avers his claim did not begin to accrue until that date; therefore, the instant lawsuit is not time barred.

In Delaware State College v. Ricks, the Supreme Court held that undertaking a review of an employment decision does not impact the date on which a discrimination claim accrues. 449 U.S. 250,

261 (1980). In Ricks, a college professor objected to a decision to deny him tenure. Ultimately, the Court held that his cause of action began accruing when he was first denied tenure; not when the grievance was finally settled. Id. In its holding, the Court stated "entertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative." Id. Plaintiff attempts to mitigate the Ricks holding by arguing the rationale set forth in dissent in Chardon v. Fernandez should be applied to this case. 454 U.S. 6, 9 (1981). However, the majority in Chardon affirmed the holding in Ricks. Accordingly, Ricks will be applied to the instant litigation.

Here, there is no dispute that the final termination of Plaintiff took place on January 15, 2002. Plaintiff was specifically told that the decision was final, and, in fact, he testified so at his deposition. Greer Dep. at 343-45, Ex. 60. Moreover, although Plaintiff claims the termination decision was reevaluated by Defendant after January 15, 2002, no evidence has been proffered to support this contention. As a result, Plaintiff's claim began to accrue on January 15, 2002, and expired on January 15, 2004. Plaintiff filed the instant action weeks later on January 30, 2004.

**3. EEOC Claim**

Finally, Plaintiff argues the statute of limitations was tolled during the pendency of his EEOC claim, which was filed on February 7, 2002 and denied in September 2002. If the EEOC claim tolled the statute of limitations, Plaintiff's claim would be timely filed.

Neither the Minnesota courts nor the Eighth Circuit courts have examined whether an EEOC claim tolls a MWA action. However, the Supreme Court and other circuits have ruled on the tolling effect of EEOC claims on other actions. In Johnson v. Ry. Exp. Agency, Inc., the Court held the filing of an EEOC claim did not toll the statute of limitations on a 42 U.S.C. § 1981 claim. 421 U.S. 454,

466-67 (1975). A number of circuits have applied the rationale set forth in Johnson to other types of claims. See, e.g., Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322-23 (7th Cir. 1992) (state law claim of invasion of privacy); Arnold v. United States, 816 F.2d 1306, 1313 (9th Cir. 1987) (intentional torts). Additionally, this Court has held a claim before the Minnesota Department of Human Rights does not toll statutes of limitations. Griffin v. Amer. Motors Sales Corp., 618 F. Supp. 455, 459 (D. Minn. 1985).

Plaintiff argues that in spite of these cases, this Court should toll the statute of limitations. Plaintiff relies on a pair of cases from the Southern District of New York, both of which held that the pendency of an EEOC claim tolled the statute of limitations on various actions. Le Provost v. New York, 03-2544, WL 32860, *7 (S.D.N.Y. Jan. 6, 2004); Brown v. Bronx Cross County Medical Group, 834 F.Supp. 105, 111 (S.D.N.Y. 1993). Provost, however, notes that there is a clear split of authority among district courts in the Second Circuit. Provost, WL 32860 at *7. In any event, because the clear weight of authority suggests an EEOC claim does not toll the statute of limitations, the Court adopts that view. Consequently, Plaintiff's claim was not filed within the applicable statute of limitations, and therefore judgment will be granted for Defendant.

**C. Causation**

Even if the instant action were timely filed, Plaintiff's claim can not survive summary judgment because he proffers no evidence of causation. To establish a retaliation claim under the MWA, a plaintiff must demonstrate that: (1) he engaged in statutorily protected conduct; (2) Eaton took an adverse employment action against him; and (3) there is a causal connection between the two. Cokley v. City of Otsego, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001). Plaintiff participated in two allegedly

protected activities prior to his termination, including his complaint to the corporate hotline in September 2001 and his OFCCP complaint in November 2001.

Defendant argues that the individuals who made the selections for the reduction in force were unaware of Plaintiff's complaints. Vince Duray, for example, testified that he was not aware of Plaintiff's complaints. Duray Dep. at 71-73, 83. Patrick Collins, although he learned of the OFCCP complaint days before Plaintiff's termination, did not know of the complaint when the actual lay off selections took place. Collins Aff. ¶¶ 3-4. After he learned of the complaint, Collins reviewed the lay off procedures to make sure they were compliant. Id. Satisfied that the decisions were correct, Collins gave the go ahead to terminate Plaintiff. Id.

Plaintiff argues that the decision makers were aware of his various complaints. Specifically, he claims that the decision makers were aware of his VEVRAA complaints at the time they made the decision to terminate him; however, Plaintiff has proffered no evidence to support this assertion. Additionally, Plaintiff argues Collins was aware of the corporate hotline complaint. As discussed, however, the record indicates that Collins was not aware of the complaint until after the decision to terminate Plaintiff had been made. Furthermore, Plaintiff asserts Collins undertook a review of the decision to terminate Plaintiff that extended beyond January 15, 2002, but again, Plaintiff does not present any evidence of this allegation. Because Plaintiff has failed to adduce any evidence to suggest that Defendant was aware of his complaint at the time of his termination, causation can not be established.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Eaton Corporation's Motion for Summary Judgment [Docket No. 17] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: May 24, 2005.